**STATE of Missouri, Respondent,**

v.

**Earl A. RODNEY, Appellant.**

**No. WD 40009.**

Missouri Court of Appeals,
Western District.

Sept. 27, 1988.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Nov. 1, 1988.

Application to Transfer Denied
Jan. 17, 1989.

Willis L. Toney, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P.J., and LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellant Earl Anthony Rodney was convicted after trial by jury of murder in the second degree, for which he was sentenced to life imprisonment; assault in the second degree for which he was sentenced to one year imprisonment and two counts of armed criminal action for which he received two three-year sentences. Appellant's sentences were ordered to run concurrently.

The charges against the appellant arose out of an incident on April 25, 1986, where the appellant had shot and killed Son I. Johnson and shot and wounded Eloris Brown. Son Johnson and Eloris Brown had been dating for a number of years prior to this incident. Appellant claimed self-defense.

All of the parties to this incident were originally from the country of Jamaica. Appellant testified that shortly after he came to Kansas City in February of 1985, he "got a job in the drug business." According to the appellant he worked for other Jamaicans renting houses out of which drugs were sold by others for themselves and for him.

Eloris Brown testified at trial that on the evening of April 25, 1986, she was with Son I. Johnson, whose nickname was "Bond", the appellant, who was also known as "Jamaican Tony", and several other individuals at a house at 3917 Wabash, Kansas City, Missouri. According to the appellant,

he and Johnson were "in business together." The appellant said he sold drugs for Johnson and "was supposed to turn all the money over to him." The appellant said that he and Johnson got into an argument concerning $800 in proceeds from drug sales which appellant had failed to turn over to Johnson. The appellant testified that in addition to the $800 he owed Johnson, money was missing from other "workers" and Johnson began "to get really mad." Eloris Brown testified at trial that as the appellant and Johnson argued over the money the appellant announced, "I'm going to kill a man," and when Johnson walked toward the appellant and stated, "You can't kill anybody," the appellant pulled a gun from his waist and shot Johnson. The appellant testified that he shot Eloris Brown as she was sitting on the couch holding a pistol on him in support of Johnson. Eloris Brown denied that either she or Johnson was armed or that Johnson had threatened the appellant prior to the shooting. Appellant testified that Johnson threatened him and his girlfriend, Donna Chin, with an M–16 rifle and that he felt Johnson was going to kill them.

Appellant testified that following the shootings he fled to Canada because he feared for his life. Once he shot Johnson, the appellant explained, he knew that people "all over the United States" were out to get him because he "got, you know, one of the top dealers."

In his first point on appeal appellant argues that the trial court erred in overruling his motions for acquittal because the State did not sustain its burden of proving beyond a reasonable doubt that the shooting of Son Johnson and Eloris Brown was not justified by way of self-defense.

■ In determining the sufficiency of the evidence, an appellate court will accept as true all evidence tending to prove the defendant's guilt together with all reasonable inferences which support the verdict; all contrary evidence and inferences will be ignored. *State v. Rousan*, 752 S.W.2d 388, 389 (Mo.App.1988). In reviewing a challenge to the sufficiency of the evidence,

appellate review is limited to a determination of whether there is sufficient evidence from which reasonable persons might have found the defendant guilty beyond a reasonable doubt. *Id.* at 390. The testimony of a single witness, if believed by a jury beyond a reasonable doubt, is sufficient proof of identity and will support a criminal conviction. *State v. Chunn,* 701 S.W.2d 578, 584 (Mo.App.1985); *State v. Morton,* 684 S.W.2d 601, 605 (Mo.App.1985).

■ The rule that the testimony of a single witness is sufficient to support a conviction applies even though testimony of that witness might be inconsistent; any inconsistencies are for the jury to resolve. Similarly, contradictions in a witness' testimony do not prevent it from constituting substantial evidence. *State v. Jones,* 738 S.W.2d 513, 514 (Mo.App.1987); *State v. Barnes,* 693 S.W.2d 331, 332 (Mo.App. 1985).

Appellant argues that Eloris Brown changed her story and that her testimony was full of contradictions and improbabilities. Specifically the appellant argues that Eloris Brown changed her story as to whether or not Son Johnson had a gun, or even carried a gun, or if there was a gun in the house at the time of the shooting.

■ Eloris Brown gave a deposition in the case where she denied ever seeing drugs or guns in the possession of Son Johnson or at 3917 Wabash. Eloris Brown admitted at trial that she had falsely stated during her deposition that she had never observed any cocaine or guns at 3917 Wabash but she did not retract her deposition testimony that she had never seen Son Johnson with any guns.

Appellant is apparently relying inappropriately on the rule of "destructive testimony" or more aptly described, "destructive contradictions." *State v. Burns,* 671 S.W. 2d 306, 311 (Mo.App.1984). Under this rule the inconsistencies or contradictions must be so diametrically opposed to one another as to preclude reliance thereon and rob the testimony of all probative force. *State v.*

*Kuzma,* 745 S.W.2d 700, 702 (Mo.App. 1987). Furthermore, in applying the rule, an appellate court will consider only the respective elements of a witness' testimony at trial, not any contradictions between trial testimony and prior out-of-court statements. *Id.*

■ Appellant also attacks Eloris Brown's testimony by arguing that another witness who testified to having been in the house a few hours before the shooting said that at that time Son Johnson had a gun, that there was a rifle in the room where the shooting took place and further that this witness knew Son Johnson carried a gun and that he was not reluctant to use it. Any inconsistencies between the testimony of this witness and Eloris Brown were for the jury to decide.

■ Appellant argues further on this point that the testimony of Eloris Brown in regard to how the shooting took place does not comport with the physical evidence at the scene. Appellant argues that testimony as to the location of spent shells at the scene of the shooting supported the appellant's testimony of how the shooting took place. The location of the spent shells was certainly not controlling in this case. The shells might have been knocked to where they were found before the police arrived, they might have ricocheted to where they were found or as the prosecutor pointed out in his closing argument, they might have been placed there by the appellant or someone else in the house.

■ In the same vein appellant argues that Eloris Brown's testimony that appellant was three to five feet away from Johnson when the shooting took place was inconsistent with the testimony of the Jackson County Medical Examiner who testified that no "stippling"[1] was found in the body of Johnson. The Medical Examiner testified that the absence of stippling is indicative of a close range wound. The Medical Examiner further testified that the head wound of Johnson was not a "contact wound", i.e., where the barrel of the gun is

1. The term "stippling" refers to "small bits of powder, gunpowder, driven into the skin pro-

ducing punctate red spots around the gunshot wound."

flush with the skull. The Medical Examiner did not testify that a shot from three to five feet would necessarily produce stippling.

In concluding his argument on this point appellant argues that the evidence against him was so unconvincing, improbable and inconsistent that the only rational conclusion to be made was that appellant acted in self-defense. However, the jury as the trier of facts, determines the credibility of the witnesses, and is privileged to believe all, some or none of any witness' testimony in arriving at its verdict. *State v. Pippenger*, 708 S.W.2d 256, 260 (Mo.App.1986); *State v. Carter*, 670 S.W.2d 104, 108 (Mo.App.1984). Obviously, the jury was not bound by the appellant's self serving claim of self-defense. *State v. Smith*, 735 S.W.2d 65, 69 (Mo.App.1987); *State v. Pinkus*, 550 S.W.2d 829, 838–839 (Mo.App.1977). This is particularly true in the case at bar where the jury was entitled to assess appellant's credibility in light of his admitting 14 prior criminal convictions, *State v. Byrth*, 395 S.W.2d 133, 135 (Mo. 1965); and the fact that he fled to Canada immediately after the shootings, which flight can be considered as indicative of his consciousness of guilt. *State v. Rodden*, 713 S.W.2d 279, 290 (Mo.App.1986).

Given the conflicting testimony on the appellant's theory of self-defense, it was a question of fact for the jury to determine if the appellant acted in lawful self-defense. *State v. Stinson*, 714 S.W.2d 839, 841 (Mo.App.1986). A trial court is authorized to acquit a defendant on grounds of self-defense only where the evidence clearly and indisputably shows that the killing was justified. *Id.* Rarely is self-defense declared by law so as to bar the submission of the homicide offense altogether. *State v. Miller*, 653 S.W.2d 222, 224 (Mo.App.1983).

Appellant's argument that it was err for the court to submit the case at bar to the jury and to overrule his motion for judgment of acquittal at the close of the State's evidence and at the close of all of the evidence is denied.

Appellant next argues that the trial court erred by allowing the State to improperly impassion the jury with evidence of appellant's involvement with illegal drugs. This point presents no reversible error.

The record herein reveals that the appellant himself first elicited the testimony concerning his status as a drug dealer, the nature of the "drug house" where the shootings occurred, as well as many other details involving the drug trade. Therefore, the appellant is in no position to complain that the State improperly introduced evidence of appellant's involvement with illegal drugs. *State v. Henderson*, 721 S.W.2d 100, 101 (Mo.App.1986); *State v. Mayo*, 559 S.W.2d 264 (Mo.App.1977). Nor can the appellant complain because the State cross-examined him about a matter he first introduced into the case during his testimony on direct examination. Great latitude is allowed on cross-examination in a criminal case, and the trial court is vested with much discretion in determining the extent of cross-examination. *State v. Lue*, 598 S.W.2d 133, 138 (Mo. banc 1980).

Appellant also complains of the prosecutor's references in closing argument to the appellant's involvement with illegal drugs. Appellant complains that the prosecutor argued the shootings took place because the appellant "wanted some money and drugs." Appellant's attorney objected on the ground that there was no testimony "that the shootings occurred "over drugs". The court sustained the objection and no further relief was requested. Appellant also complains that the prosecutor asked the jury to send a message to any other Jamaicans who, like the appellant, "would go around and murder and kill." The appellant's attorney objected on the ground that "[w]e're not trying the Jamaican community here." The court once again sustained the objection and no further relief was requested. The only other objection the appellant made to the prosecutor's closing argument, of which he now complains, was the prosecutor's argument that the appellant "brought to our town drugs." The appellant objected at trial but the court never ruled on the objection, and simply

stated "[p]roceed." No further relief was requested. In order to preserve an allegation of error on appeal there must be a proper objection *and* there must be an adverse ruling. *State v. Holland,* 530 S.W.2d 730, 733 (Mo.App.1975). The rulings of the court were not adverse to the appellant in regard to any of the prosecutor's statements to which he objected.

All of the other remarks of the prosecutor in closing argument which the appellant complains on appeal were not objected to at trial, and therefore nothing has been preserved for appeal with respect to these remarks. *State v. Jordan,* 699 S.W.2d 80, 82 (Mo.App.1985).

The judgment of the trial court is affirmed.

All concur.