**STATE of Missouri, Respondent,**

v.

**Bruce CONAWAY, Appellant.**

**Bruce CONAWAY, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 58702, 59794.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 24, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 10, 1992.

Application to Transfer Denied
March 24, 1992.

Ellen A. Blau, Deborah B. Wafer, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Bruce Conaway, was convicted, after a jury trial, of eight counts of forgery. Section 570.090, RSMo (1986). He was sentenced as a prior offender to five years on each count, the sentences on five of the counts to be served consecutive to concurrent sentences on three of the counts, for a total term of imprisonment of 25 years. Defendant thereafter filed a Rule 29.15 motion, which was denied after an evidentiary hearing. Defendant appeals from his convictions and from the denial of his Rule 29.15 motion. The appeals are consolidated for our review. We affirm defendant's convictions and the denial of his Rule 29.15 motion.

The evidence adduced at trial revealed that on October 31, 1986, defendant, using the name of Larry Williams, began a temporary job in Atlanta, Georgia with Northern Telecom, Inc. His position was described as a "cash application clerk." His duties included crediting the accounts of Northern Telecom, Inc.'s customers with payments received from them; but did not include endorsing checks or depositing them into bank accounts. Defendant left the job on or about December 10, 1986.

On December 16, 1986, defendant opened a checking account at Commerce Bank (bank) in the City of St. Louis in the name of Northern Telecom Supply and signed his name to the signature card as the company's agent. He initially deposited $200 in cash. He ordered checks and a rubber stamp for endorsing checks. On that same day, he applied for a post office box in his own name. He also registered the fictitious name of Northern Telecom Supply with Missouri's Secretary of State.

On December 17, 1986, one check from Pacific Bell, which formed the basis of Count I, and two checks from Graybar Electric Co. (Graybar), which formed the bases of Counts II and III, were deposited into the account opened by defendant. On December 18, 1986, two checks from Graybar, which formed the bases of Counts IV and V, were deposited into the account. The bank teller who accepted these checks identified defendant as the person making the deposits. Three more checks were subsequently deposited into the account by mail: one from Pacific Bell, which formed the basis of Count VI; one from Graybar, which formed the basis of Count VII; and another from Pacific Bell, which formed the basis of Count VIII. On all of the checks "Northern Telecom" was listed as the payee. The Graybar checks had been altered in that something which appeared after "Northern Telecom" had been obscured with green "white-out." A similar obliteration appeared in the endorsement on the back of the checks from Pacific Bell and from Graybar.

In January 1987, defendant bought a motor home and a small airplane, paying for the aircraft with a check drawn on the bank account. Defendant also engaged in other transactions whereby he secured additional funds, usually in the form of cash, from the bank account. Bank personnel identified defendant as the person who had conducted several of the bank transactions.

Defendant did not testify at trial and did not offer any evidence. He was convicted on eight counts of forgery and was sentenced to a total term of imprisonment of 25 years. His subsequent Rule 29.15 motion was denied, after an evidentiary hearing.

We first consider defendant's direct appeal. In his first point, defendant contends that the trial court erred in denying his motion for judgment of acquittal because the evidence "was insufficient to support a conviction for forgery on the charge laid in the indictment...." Each count of the eight count indictment charged defendant for each check under § 570.090.1(4), RSMo (1986) and read as follows:

[D]efendant, with the purpose to defraud, transferred with the knowledge or belief that it would be used as genuine, a check [with a particular number] made by [a certain payor] in the amount of [a specified amount] and at that time knew that this writing had been authenticated so that it purported to have been made by authority of one who did not give such authority.

Although defendant characterizes his claim of error as one of sufficiency of the evidence, in essence, his point relied on focuses on the failure of the charge to fit the crime. In addition, there is some question as to whether defendant's motion for new trial, in which he raises a general claim of the lack of submissibility, preserves this issue for our review. We review defendant's claim, nevertheless, under the plain error doctrine, Rule 30.20.

Section 570.090.1 provides that a person commits the crime of forgery if, with the purpose to defraud, that person:

(1) Makes, completes, alters or authenticates any writing so that it purports to have been made by another or at another time or place or in a numbered sequence other than was in fact the case or with different terms or by authority of one who did not give such authority; or

(2) Erases, obliterates or destroys any writings; or

(3) Makes or alters anything other than a writing, so that it purports to have a genuineness, antiquity, rarity, ownership or authorship which it does not possess; or

(4) Uses as genuine, or possesses for the purpose of using as genuine, or

transfers with the knowledge or belief that it will be used as genuine, any writing or other thing which the actor knows has been made or altered in the manner described in this section.

Defendant first claims that subsection (4), under which he was charged, refers only to the transfer of a writing "made or altered in the manner described in this section" and does not specifically refer to authentication, which is within the purview of subsection (1). We do not agree. Although subsection (4) itself does not mention authentication, it incorporates by reference the methods of making or altering a writing mentioned elsewhere in the statute.

In addition, the verdict directing instruction for each count mirrored the information and indictment for each count. The information and indictment, as well as the verdict directing instruction, were in the approved forms, tracking MACH–CR 24.20.4 and MAI–CR3d 324.20.4 respectively. Both the charge and the instruction permitted State to charge and to submit the offense of transferring a fraudulently authenticated writing. Because they were consistent with the approved forms, neither the indictment nor the verdict director are deemed erroneous. *See* Rule 23.01(e); *see also State v. Bailey,* 760 S.W.2d 122, 124 (Mo. banc 1988).

■ Defendant next argues that a false endorsement cannot be considered a fraudulent authentication, as set forth in the indictment. Defendant's argument is specious. To "authenticate" is defined as "to make valid and effective by the proof, attestation, or formalities required by law." Webster's Third New International Dictionary 146 (1981). Here, it was clear from the evidence that the checks were valid instruments from Graybar and Pacific Bell, payable to Northern Telecom. The only issue therefore was defendant's transfer of the valid checks with forged or false endorsements on them. *See State v. Hayes,* 602 S.W.2d 29, 32 (Mo.App.1980). The endorsements on the checks had been altered by the obliteration of what presumably was a word after the name, Northern Telecom. The endorsements attested to the fact that

defendant was the named payee and that he was entitled to payment. Defendant had no authority from Northern Telecom, Inc. either to endorse or to deposit the checks. Yet, defendant was identified as the person who had made some of the deposits at the bank. *See State v. Thompson,* 782 S.W.2d 738, 741 (Mo.App.1989).

There was sufficient evidence to support the submission of this case on the charge set forth in the indictment. The trial court committed no error, plain or otherwise, in overruling defendant's motion for judgment of acquittal. Defendant's first point is denied.

In his second point, defendant charges error in the trial court's overruling his motion to dismiss the indictment for lack of jurisdiction and venue. The crux of defendant's argument is that the fraudulent transfers with which he was charged took place, not when he deposited the checks into the bank account, but when the out-of-state banks paid on the checks. Defendant was charged with transferring fraudulently endorsed checks in violation of § 570.090.1(4). There is no definition of "transfer" in this statute. Absent a specific statutory definition, words used in a statute are given their plain and ordinary meaning. *Metro Auto Auction v. Director of Revenue,* 707 S.W.2d 397, 401 (Mo. banc 1986). "Transfer" means "to make over or negotiate the possession or control of (a right, title, or property) by a legal process usu. for a consideration." Webster's Third New International Dictionary 2427 (1981); *see also* § 400.3–201(1), RSMo (1986) (similar definition of transfer in the context of Article 3 of the Uniform Commercial Code).

■ The facts of this case clearly indicate that a transfer occurred when defendant deposited the endorsed checks into the bank account which he had established. The endorsement on each check was in blank because it specified no particular indorsee and merely consisted of a stamp of the name Northern Telecom. As such, the endorsed check became payable to the bearer, or to the bank, when it was delivered to the bank for deposit. In addition, defendant's bank account was credited in

the amount of each check which was deposited. Defendant clearly transferred, with the intent to defraud, the checks with the fraudulent endorsements when he deposited the checks with the bank. Defendant's second point is denied.

In his third point, defendant asserts that the trial court erred in admitting into evidence the checks made by Pacific Bell which formed the bases of Counts I, VI, and VIII. Defendant avers that the checks were hearsay and were not authenticated as business records. We have reviewed the record and find that no error of law appears with regard to this claim of error. An extended opinion on this point would serve no jurisprudential purpose. Point III is denied in accordance with Rule 30.25(b).

■ In his fourth point, defendant avers that the trial court erred in admitting into evidence two deposit slips from the bank because they constituted hearsay evidence. Defendant argues that the testimony of two bank tellers was insufficient to qualify the deposit receipts as business records.

Section 490.680, RSMo (1986), the Uniform Business Records as Evidence Act, provides as follows:

> A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

This provision vests the trial court with considerable discretion in passing upon the admissibility of the records. *State v. Davis*, 608 S.W.2d 437, 439 (Mo.App.1980).

Here, two bank tellers testified that their duties included the making of deposits into bank accounts. Both tellers stated that the usual procedures for accepting a deposit involved the issuing of a receipt as the record of the deposit. Each deposit receipt had a teller number stamped on it. Both tellers said that a deposit slip was made and issued contemporaneous with the actual deposit by the bank customer. Each of the tellers testifying identified one of the deposit slips as having been issued by her, based upon her particular teller identification number. This evidence was sufficient to warrant the admission of the two deposit slips as business records. The trial court did not abuse its discretion in admitting the deposit slips into evidence. Defendant's fourth point is denied.

Defendant's fifth point concerns his appeal from the denial of his Rule 29.15 motion, after an evidentiary hearing. We have reviewed the record and find that no error of law appears. An extended opinion would have no precedential value. Defendant's point is denied in accordance with Rule 84.16(b).

Defendant's convictions and the denial of his Rule 29.15 motion are affirmed.

GRIMM, P.J., and SIMON, J., concur.